IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS MARCH 4, 2005

AMOS E. QUALLS v.
HENRIETTA J. Q. KLUTTS, As Executrix of Estate of Henry Atlas Qualls
IN RE: THE ESTATE OF HENRY ATLAS QUALLS

Direct Appeal from the Probate Court for Perry County
No. PB-325      Donald P. Harris, Judge

No. M2003-01850-COA-R3-CV - Filed August 9, 2005

The *pro se* Appellant has asked this Court to review the lower court's denial of his petition contesting the manner in which the executrix administered the estate. Specifically, the Appellant seeks certain personal property from his father's estate he argues the Appellee, his sister, is unlawfully withholding as executrix. The Appellant filed a statement of the evidence with this Court in lieu of filing transcripts of the testimony. After the Appellee objected to the statement of the evidence, the trial court ruled that the Appellant's statement of the evidence was inaccurate or incomplete. Without a sufficient record, we cannot adequately review the trial court's decision to dismiss the Appellant's petition. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Amos E. Qualls, Fayettville, TN, *pro se*

Landis Turner, Hohenwald, TN, for Appellee

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Henry Atlas Qualls ("Decedent") died a resident of Perry County, Tennessee, on May 18, 2000. The Decedent was predeceased by his wife and was survived by their three children: Henrietta Qualls Klutts ("Executrix" or "Appellee"), Jerry Franklin Qualls, and Amos Eugene Qualls ("Appellant"). On August 5, 1998, the Decedent executed his Last Will and Testament appointing Executrix to administer his estate. The Decedent's will also contained an *in terrorem* clause, providing:

> Every heir, legatee, devisee, or beneficiary under this Will who shall contest in any court any provision of this instrument shall not be entitled to any devises, legacies, or benefits under this Will or any codicil hereto or any trust created hereby, and any and all devises, legacies, and portions of the income or corpus of my estate, otherwise provided to be paid to such person, shall lapse and shall be paid, distributed and passed as though such person had died prior to my death leaving no living lawful descendants. My Executrix herein named are specifically authorized to defend at the expense of my estate any consent or attack of any nature upon this Will or any codicil hereto, or upon any paragraph or provision hereto.

The Decedent's will provided that his real property should go to Executrix,[2] and any money or securities held by the Decedent at his death should go to his three children in equal shares. Regarding the personal property he owned at his death, the Decedent's will directed as follows:

> I hereby direct that all my personal property shall be disposed of as follows:

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides as follows:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] On March 18, 2000, just prior to his death, the Decedent executed a quitclaim deed conveying his real property to Executrix and reserving in himself a life estate.

(A) I first direct that so much of my personal property that consists of Indian relics, carvings, and art works that I have created shall be divided in the following manner:

Each of my children shall, in turn, (starting first with Amos Eugene Qualls, then second with Jerry Franklin Qualls, and third with Henrietta Joy Klutts) pick an item, and continue in turns picking one item at a time until each of them shall have chosen as many items as they desire: provided however that if there are any items in this category remaining after each shall have had as many opportunities as possible, or they desire, then the devise of such remaining items shall lapse and become a part of the residue of my estate. (It is my wish, although not an absolute direction, that the Indian relics, so far as possible be kept together as a whole collection and not sold at any auction or sale that my [sic] be part of the administration of my estate.)

(B) I direct secondly, that so much of my personal property that consists of items that were given to myself and my late wife as gifts from my children, Amos Eugene Qualls, Jerry Franklin Qualls, and Henrietta Joy Klutts, shall be distributed to the child which gave such item as a gift in the first instance.

(C) Thirdly I direct that such items of personalty as remain after the devise and distribution [in the preceding sections] shall become part of the residue of my estate and disposed of as hereinafter described.

The Decedent's will directed that all items of personal property falling within the residue of his estate be sold at auction and the net proceeds divided in equal shares among his three children.

Shortly after the Decedent's death, the Executrix filed a petition in the Chancery Court of Perry County seeking to admit his will into probate. The probate court granted the petition, and the Executrix set about administering the Decedent's estate. Although the record is not entirely clear, the Decedent's children apparently selected personal property from the estate in accordance with the Decedent's will. In August of 2002, the Executrix conducted a public sale auctioning the remainder of Decedent's personal property netting $3,912.41 for the estate. In March of 2003, the Executrix filed a proposed final accounting of the Decedent's estate. Thereafter, Mr. Qualls filed a *pro se* petition asking the chancellor to reject the Executrix's final accounting by finding that the Executrix failed to properly execute the terms of the Decedent's will and erred in her accounting. Mr. Qualls submitted a supplemental filing to the chancery court recounting the animosity between him and his sister, and he set forth a litany of accusations regarding the Executrix's failure to distribute the Decedent's personal property under the terms of the will. In essence, Mr. Qualls argued that his sister, while serving as Executrix, was withholding certain personal property the Decedent intended for him to have.

After conducting a hearing on the petition, the chancellor entered an order on May 12, 2003, dismissing Mr. Qualls' petition and approving the proposed final accounting submitted by the Executrix. On June 11, 2003, Mr. Qualls filed a petition asking the chancellor to reconsider his prior order, but the chancellor summarily denied the petition on June 16, 2003. That same day, Mr. Qualls filed a *pro se* notice of appeal to this Court asking this Court to review the propriety of the chancellor's May 12, 2003 order. On October 14, 2003, Mr. Qualls submitted a document to this Court entitled "Statements of Evidence in Lieu of Transcripts Pursuant to Tenn. R. App. P. 24(c)."[3] On November 13, 2003, the Executrix filed an objection to Mr. Qualls' statement of the evidence arguing that it did not adequately reflect the testimony presented at trial. By Order entered on February 2, 2004, this Court noted that the Executrix's objections to the statement of the evidence were not timely filed in compliance with Rule 24(c) of the Tennessee Rules of Appellate Procedure.[4] Nevertheless, this Court concluded that, since the trial court had yet to approve the statement of the

---

[3] Rule 24(c) of the Tennessee Rules of Appellate Procedure provides, in relevant part, as follows:

> *If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available*, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement *should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal*. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 90 days after the filing of the notice of appeal. . . .

Tenn. R. App. P. 24(c) (2004) (emphasis added). The Appellant's statement of the evidence provides that it is being filed in "lieu of transcripts." The record does not reveal whether the proceedings before the chancery court which are the subject of this appeal were recorded by a court reporter. *See* Tenn. R. App. P. 24(b) (2004) ("If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, *the appellant shall have prepared a transcript* of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.").

[4] Rule 24(c) of the Tennessee Rules of Appellate Procedure provides, in relevant part, as follows:

> If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court *within fifteen days after service of the declaration and notice of the filing of the statement*. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Tenn. R. App. P. 24(c) (2004) (emphasis added).

evidence pursuant to Rule 24(f) of the Tennessee Rules of Appellate Procedure,[5] the appeal would be stayed until a ruling by the chancellor was filed.

On February 24, 2004, the chancellor entered an order noting several inconsistencies or omissions in Mr. Qualls' statement of the evidence compared to what actually occurred at trial. In the order, the chancellor also made the following statement:

> In addition to the objections raised by the appellee, Ms. Klutts, the court feels the statement of its ruling does not accurately describe what was said by the court. While several months have elapsed and the court admittedly does not specifically recall what was said, the following is believed to be closer to what occurred than Mr. Quall's statement:
>
> > At the conclusion of Mr. Qualls' testimony, the court inquired whether he had any further evidence to offer. He stated he did not. Ms. Klutts was called to testify. She had completed her direct testimony and was being cross-examined by Mr. Qualls when the court did intervene and state the complaint was being dismissed.
> >
> > The Court: Mr. Qualls the court is dismissing your case. Actually, I have known since the beginning that you would probably lose the case but I wanted to give you the opportunity to change my mind. You see, your father's will has a provision that states if any beneficiary under the will shall contest any of its provisions then any devise to that person shall lapse. Your father provided that your sister, Ms. Klutts, was to be the administratix of the will without being required to post a bond, file an inventory or to make any accounting. The purpose of such a provision, in the court's opinion, was to prevent the

---

[5] Rule 24(f) of the Tennessee Rules of Appellate Procedure provides, in relevant part, as follows:

> The trial judge shall approve the transcript or statement of the evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. . . .

Tenn. R. App. P. 24(f) (2004).

kind of proceeding we are having here today. I truly believe that avoiding such a proceeding was what your father wanted and, therefore, *must construe your action in this court as contesting a provision of your father's will*. Your sister, as a result of your action, could have paid you nothing but she has not done so. She has given you the share she believes is called for by the will. Your father trusted her to do this and, as a result of your father's will, the court must trust her unless you could have proven some sort of fraud which you have not. . . . *The court cannot even find by a preponderance of the evidence that Ms. Klutts was untruthful.* Most of the items you listed had very little value. The items that did . . . there is an explanation for. The court finds it unlikely she would lie about things of such little value. What the court is convinced of is that the [sic] this is the kind of contest between brother and sister that your father wanted to avoid. The case shall be dismissed with costs for this proceeding taxed to Mr. Qualls.

(emphasis added).

## II.
### ISSUE PRESENTED

Upon reviewing the brief filed by Mr. Qualls with this Court, we note that it contains in excess of thirty (30) issues. Mr. Qualls concedes the futility of this approach by making the following statement in his brief:

> As a practical matter, the court is not expected to take the necessary time to rule on all those issues listed here on an individual basis. [Appellant] would be happy to receive the remedies requested — and prays that the court rule in his favor. Maybe some of the issues can be combined and dealt with in a more general manner, rather than with specificity as set forth here, or maybe the court could choose which issues are most significant to rule on.

According to Mr. Qualls, the key issue in this case is who owns the right to certain personal property held in the Decedent's estate. In actuality, the single issue for this Court's resolution can be stated as follows: whether the trial court erred in dismissing the Appellant's petition contesting the

Appellee's final accounting and manner of administering the estate. For the following reasons, we must affirm the trial court's decision.

## III.
### ANALYSIS

Rule 24(e) of the Tennessee Rules of Appellate Procedure provides as follows:

> If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. *Absent extraordinary circumstances, the determination of the trial court is conclusive.* If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Tenn. R. App. P. 24(e) (2004) (emphasis added); *see also Artrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. Ct. App. 1985) ("When a dispute arises, the one who directed the proceedings, the Trial Judge, is not only the best one, but is the only one who can resolve such disputes absent extraordinary circumstances, such as the death of the Trial Judge."). After evaluating the Appellant's statement of the evidence, the trial court entered an order noting that, while it did contain some of the evidence produced at the hearing, it also included the Appellant's unsworn comments and personal observations and omitted the testimony of the Appellee offered under direct examination. The trial court noted in its order of February 24, 2004, that the Appellee testified that some of the items of personal property requested by the Appellant were either stolen or had been given to her by the Decedent or her mother prior to their deaths. Otherwise, she denied withholding the other items requested by the Appellant. The trial court found the Appellee's testimony to be truthful, and we find nothing in the limited record to subvert this finding. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) ("[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.").

"Parties who choose to represent themselves are entitled to fair and equal treatment by the courts." *Hodges v. Tenn. Attorney Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). "*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (citing *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I. 1987)). "However, the courts may not prejudice the substantive rights of the other parties in order to be 'fair' to parties representing themselves. Parties who choose to represent themselves are not excused from complying with the same applicable substantive and procedural law that represented parties must comply with." *Hodges*, 43 S.W.3d at

920 (citations omitted); *see also In re Estate of Lois Chandler*, No. E2000-03055-COA-R3-CV, 2001 Tenn. App. LEXIS 848, at *6–7 (Tenn. Ct. App. Nov. 15, 2001).

The Appellant utilizes a significant portion of his brief to argue that the trial court erred in applying the *in terrorem* clause in the Decedent's will to his petition. Our supreme court has previously ruled as follows:

> This Court has recognized that a forfeiture provision in a will is not void as against public policy. *Tate v. Camp*, 147 Tenn. 137, 149, 245 S.W. 839, 842 (1922); *Thompson v. Gaut*, 82 Tenn. 310, 314 (1884). However, it has been the rule since *Tate v. Camp*, that a forfeiture provision will not be enforced where a contest is pursued "in good faith and upon probable cause." After considering decisions from other jurisdictions, the Court in *Tate v. Camp* approved the following from *South Norwalk Trust Co. v. St. John*, 92 Conn. 168, 101 A. 961, 963 (1917), "'Where the contest has not been made in good faith, and upon probable cause and reasonable justification, the forfeiture should be given full operative effect. Where the contrary appears, the legatee ought not to forfeit his legacy.'" *Tate v. Camp*, 147 Tenn. at 155-56, 245 S.W. at 844.

*Winningham v. Winningham*, 966 S.W.2d 48, 51 (Tenn. 1998). We cannot determine if the Appellant's petition was filed in good faith and upon probable cause because our ability to review the facts necessary to making such determination is hampered by an incomplete and inaccurate statement of the evidence. Likewise, even if we were inclined to address each and every issue presented by the Appellant in his brief, the state of the record prevents an adequate review of those issues as well.

The Tennessee Rules of Appellate Procedure place the responsibility for preparing an accurate transcript or statement of the evidence upon the appellant. *See* Tenn. R. App. P. 24(b) (2004); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Without a statement of the evidence which accurately reflects the evidence presented to the trial court, we must presume that the record, had it been accurately presented to this Court, would contain sufficient evidence to support the trial court's decision. *See Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992); *McDonald*, 772 S.W.2d at 914. Accordingly, we affirm the trial court's decision to dismiss the Appellant's petition.

**IV.**
**CONCLUSION**

For the foregoing reasons, we affirm the chancery court's decision to deny the Appellant's petition. Costs of this appeal are taxed to the Appellant, Amos Eugene Qualls, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE